BRAVERMAN LAW PC
450 Seventh Avenue, Suite 1308
New York, New York 10123
T. (212) 206-8166
F. (646) 452-3828

---

December 21, 2018

**VIA ECF**
Honorable Kevin N. Fox
United States Magistrate Judge
District Court of the Southern
District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Bruno-Gonzalez v. Kimnam Co., Inc., et al.*
              <u>Case No.: 17-cv-05945 (KNF)</u>

Dear Judge Fox:

      This firm represents Plaintiff Tlaloc Bruno-Gonzalez ("Plaintiff" or "Bruno-Gonzalez") in the above-referenced matter brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"). This letter is submitted jointly with counsel for Defendants Kimnam Co., Inc. and Yun Suk Nam (all referred to collectively as the "Defendants"), to seek approval of the Settlement Agreement reached in this matter.

**FACTUAL ALLEGATIONS**

      Defendants own and operate a large deli and restaurant called "Café Exchange." While employed by the Defendants, Bruno-Gonzalez was tasked with various duties, including making deliveries, stocking inventory, and cleaning the premises of the deli.

      In this action, the Plaintiff alleged that during the period beginning on or about December 2012 and continuing until on or about the middle of 2013, he worked at Café Exchange for 5 days each week. He was scheduled to work from 9:00 a.m. until 7:00 p.m., with breaks each day lasting approximately a total of one hour, such that he worked approximately 9 hours a day. As a result, Bruno-Gonzalez worked an average of approximately 45 hours per week during this time period. During this initial period, Bruno-Gonzalez was paid a sum of $280.00 per week, plus tips made as a deliveryman. Beginning in around the middle of 2013, Plaintiff Bruno-Gonzalez began working 6 days a week, taking off on Sundays. During the week his schedule would be from approximately 6:00 a.m. until 4:00 p.m., with a total of 1 hour of a break, and on Saturdays he would work a 9-hour shift (but with little, if any breaks); as a result he worked a total of approximately fifty-four hours a week. His pay during this period was a sum of $420.00 per week, plus tips from his deliveries. Starting in approximately October 1, 2016, his pay was increased to $575.00 per week. He was working 6 days a week, from approximately 6 a.m. to

4:00 p.m., for a total of approximately fifty-four hours a week. Plaintiff was out of work for approximately a month and one-half, from January 1, 2017 until approximately February 15, 2017, due to an injury. After his return, he worked only 5 days a week, from approximately 6:00 a.m. until 4:00 p.m., for a total of approximately forty-five hours per week. He received a sum of $450.00 per week. During his employment with Defendants, Plaintiff Bruno-Gonzalez never worked more than 3 hours a day making deliveries. The balance of his day was spent stocking inventory, cleaning and various other related tasks at the deli. The Defendants did not provide Bruno-Gonzalez with notices informing him of, inter alia, his rate of pay at the time of hiring. Finally, the Defendants did not provide Bruno-Gonzalez with notices informing him that Café Exchange would be taking a "tip credit" against his wages.

Counsel for the parties first exchanged documents and participated in a mediation session on November 20, 2017, which was unsuccessful. Counsel then attended an initial pre-trial conference on April 25, 2018. Following this, counsel completed documentary discovery and participated in a settlement conference conducted by the Honorable Henry B. Pitman on August 16, 2018 where they arrived at a settlement memorialized in the Settlement Agreement attached hereto as <u>Exhibit A</u>.

## THE SETTLEMENT AGREEMENT

The proposed Settlement Agreement represents a reasonable compromise of disputed issues and provides a fair resolution for the Plaintiff. The Settlement Agreement reached by the parties provides for Defendants to pay Plaintiff the amount of $17,500.00 (the "Settlement Sum") to resolve this matter. Plaintiff will receive $11,292.11, representing 66.67% of the net settlement proceeds of $16,937.00 (which is equal to the Settlement Sum of $17,500.00 reduced by disbursements equal to $563.00[1]). Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum in 24 payments; an initial payment of $729.32 on or before October 15, 2018, with subsequent payments of $729.16 each month thereafter for 23 months. Considering the pay-out period, Yun Suk Nam executed an Affidavit of Confession of Judgment on behalf of himself and the corporate defendant in the event of default attached hereto as <u>Exhibit B</u>.

## THE SETTLEMENT IS FAIR AND REASONABLE

The proposed Settlement Agreement resolves bona fide disputes and reflects a compromise of contested issues that led to Plaintiff resolving this matter early in the litigation. *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp*., No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (*quoting Garcia v. Bae Cleaners Inc*., No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit

---

[1] Disbursements consist of the PACER filing fee of $400.00 plus service of process fees of $163.00.

Hon. Kevin N. Fox
December 21, 2018
Page 2 of 5

consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The parties believe the settlement here is fair and reasonable under these factors.

Notably, the parties reached this settlement with the Court's assistance during a settlement conference. At the settlement conference, the Court heard the parties' positions and recommended a settlement, which the parties accepted. This fact alone supports that the settlement is fair and reasonable. In addition, the *Wolinsky* factors also indicate that the settlement is fair and reasonable.

### I.   Plaintiff's Range of Possible Recovery

Plaintiff's counsel calculated Plaintiff's unpaid wages to be approximately $20,095.88, representing unpaid minimum wages and overtime wages. With liquidated damages, prejudgment interest and fines for failure to provide adequate notices at time of hiring and with each paycheck, Plaintiff's total asserted damages were approximately $55,617.64. The Settlement Sum of $17,500.00 represents a recovery of approximately 87% of the unpaid wages, not taking into account liquidated damages, interest and WTPA fines (as the same are often set aside during early-stage settlement discussions). Given that the Defendants are small businesses, and the individual owners of such businesses, this is a respectable sum with a realistic chance of repayment, and should therefore be approved.

### II.   Avoidance of Litigation Burdens and Expenses

The proposed Settlement Agreement resolves bona fide disputes and reflects a reasonable compromise over contested issues that led the parties to resolve this matter without engaging in protracted litigation. Through this settlement, Plaintiff is recovering a relatively high proportion of his past-due wages. Continuing through discovery and eventually to trial would consume significant amounts of time and resources, and substantial judicial resources, and add to the uncertainty of whether Plaintiff would collect anything at all.

### III.   Plaintiff's Litigation Risks

If the litigation were to proceed, Plaintiff would face significant collection risk, even if he succeeded on all claims and were awarded liquidated damages at trial. The Defendants purportedly recently settled another case, putting strain on the Defendants finances. In light of these risks, this settlement provides Plaintiff with compensation as well as a right to recover

Hon. Kevin N. Fox
December 20, 2018
Page 4 of 5

against the owner individually in the event of a default, all without spending additional resources on legal expenses.

### IV. Arms' Length Negotiations, Absence of Collusion

Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the parties. Settlement of this matter required a significant expenditure of time and effort, including various discussions with Plaintiff, the creation and subsequent review and discussion of damage calculation spreadsheets, and the negotiation of the terms of the Settlement Agreement.

The Parties' vigorous negotiations and amount of work performed in this matter confirm that there was no collusion or fraud and that the settlement amount is the product of fair and reasonable negotiations.

### V. Attorney's Fees

Plaintiff's counsel has used its expertise and experience in litigating this case in order to provide a satisfactory result to Plaintiff. Pursuant to the retainer agreement between plaintiff and counsel, Plaintiff's attorneys' fees are $5,644.89, which equals 33.33% of the net settlement amount of $16,937.00 (i.e., the Settlement Sum of $17,500.00 reduced by disbursements of $563.00).

This amount is fair and reasonable as it was the fee agreed upon by Plaintiff in his retainer agreements. Indeed, courts in the Second Circuit routinely approve this fee arrangement. *See, e.g., Plizga v. Little Pol. Rest. Inc*., No. 15 Civ. 8820 (LAK) (BCM), 2016 U.S. Dist. LEXIS 94859, at *1647 (S.D.N.Y. July 18, 2016) ("[A]ttorneys' fee awards of one third or less of the total settlement amount are, in most cases, considered reasonable in this District."); *Shekar v. Delancey's Orchard LLC, et al*., No. 15 Civ. 5022 (ER), ECF No. 45 (Order Granting Mot. to Approve Parties' Settlement) (S.D.N.Y. Dec. 6, 2016) ("[T]he retainer agreement between Plaintiff and Plaintiff's counsel provides for a one-third contingency fee, an amount that is commonly accepted in the Second Circuit in FLSA cases.'"); *Hyun v. Ippudo USA Holdings,* No. 14 Civ. 8706 (AJN), 2016 US Dist LEXIS 39115, at *3 (S.D.N.Y. Mar. 24, 2016) (awarding one-third contingency fee and noting that it is "common in this District"); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG) (VMS), 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

Time sheets submitted herewith as <u>Exhibit C</u> show a total of 21.71 hours spent on this case, yielding a lodestar of $7,476.00 (at $350.00 per hour, except for travel time, which was billed at $175.00 per hour). The requested legal fee of $5,644.89 is *less* than the lodestar of $7,476.00. Given that courts in this District have approved legal fees which are substantially higher than the lodestar, the requested fee here is necessarily reasonable. *See, e.g., Sakiko Fujiwara v. Sushi Yashuda Ltd.,* 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding a fee that represented a 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately"); *see also Febus v. Guardian First Funding*

Hon. Kevin N. Fox
December 21, 2018
Page 5 of 5

*Grp.*, LLC, 870 F.Supp.2d 337, 340 (S.D.N.Y. 2012) ("For fees of $283,333 and a lodestar of $127,000, the resulting "lodestar multiplier" of 2.2 is well within the range of acceptable.").

My rate of $350.00 per hour is well within the range of reasonable hourly rates approved by this Court and other courts in this District for employment and wage and hour matters. *See, e.g., Gutman v. Klein*, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (holding that rates of $300 to $400 per hour for partners and $200 to $300 per hour for senior associates and $150 to $200 per hour for junior associates were reasonable); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases." (citing cases)). Braverman Law PC represents employees in various aspects of labor and employment law, with an emphasis on wage and hour matters under the FLSA and the NYLL. I have prosecuted over a dozen wage and hour cases. I have been primarily responsible for the prosecution of the claims in this matter, and I have handled all of the day-to-day interactions with Plaintiff, including discussing the facts of Plaintiff's employment, drafting the Complaint, attending court conferences, calculating damages, and exchanging correspondence with defense counsel. Finally, this firm charges and receives the rate $350.00 for handling FLSA cases for defendants. Accordingly, the rate of $350.00 per hour is reasonable.

## THE SETTLEMENT AGREEMENT ACCORDS WITH FLSA POLICY

As the Court can see from the terms of the settlement agreement, the parties steer clear of any post-Cheeks concerns. First, the settlement agreement does not contain a confidentiality provision. Second, the settlement agreement does not contain a provision barring Plaintiff from discussing his experience litigating against Defendants with any other potential litigants against the Defendants. Third, the agreement does not contain an overly broad waiver of claims against the Defendants. *See Lopez v. Nights of Cabiria*, LLC, 96 F.Supp.3d 170, 180 (S.D.N.Y. 2015)

For the reasons stated above, the parties jointly request that the Court approve the Settlement Agreement as presented to the Court.

Respectfully submitted,

Adam Braverman, Esq.

cc:   Jonathan Sue, Esq. (via ECF)